No. 22,408.

MACK SMART, *Appellee,* v. JOHN MAYER and JOE GLADDIS, and JOHN MAYER doing business as THE KATY COAL COMPANY, *Appellants.*

### SYLLABUS BY THE COURT.

NEGLIGENCE—*Props in Coal Mine—Amended Petition—No New Cause of Action Stated—Finding.* The proceedings examined, and *held,* an amendment to the petition did not introduce a new cause of action, and no prejudice resulted from refusal to set aside a finding of fact.

Appeal from Crawford district court; ANDREW J. CURRAN, judge. Opinion filed July 10, 1920. Affirmed.

*J. J. Campbell,* of Pittsburg, and *E. L. Burton,* of Parsons, for the appellants.

*Charles Stephens,* of Columbus, and *Thomas W. Clark,* of Pittsburg, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one for damages for personal injuries sustained by a coal miner in the defendants' mine. The plaintiff recovered, and the defendants appeal.

All questions but one are solved by an interpretation of the amended petition on which the parties went to trial. After stating that the plaintiff was injured by a fall of rock from the roof of the room in which he was working, and describing the place where the accident occurred, the petition contained a general charge that the defendants were negligent in failing to furnish plaintiff with sufficient and proper prop timbers for bracing the roof of the plaintiff's mine room. The petition then continued as follows:

"*Third:* Plaintiff now says and alleges that it was the duty of the defendants and their said mining boss, Joe Gladdis, to furnish this plaintiff with prop timber of suitable length, quality and size for the purpose of bracing the roof of said mine room, and that the timbers so furnished were insufficient in length, size, and strength, and at the time of the injury to plaintiff, at the time and in the manner aforesaid, the said props gave way, broke and fell under the weight and pressure of the roof of his room, thereby causing and permitting the said rock, slate or stone to fall upon and injure plaintiff as aforesaid.

"*Fourth:* Plaintiff further alleges that he was unaware of the impending danger as herein alleged and fully set forth at the time, but that the defendants either knew or could have ascertained by use of due care and diligence, that said prop timber furnished him was insufficient in length, size, and strength, and that it was not suitable for the purposes intended by them.

"*Fifth:* Plaintiff further alleges that it was the duty of the said mining boss, Joe Gladdis, defendant here, to inspect or keep a careful watch over the class and kind of prop timber furnished plaintiff, for the purpose of properly bracing his said room in said mine, and to keep said timber at easy access, and that this duty was independent of the employment of the said John Mayer, and John Mayer doing business as the Katy Coal Company, but that this duty was incident to and part of the operation of said mine as imposed by law, but that said defendant, Joe Gladdis, willfully, carelessly and negligently failed to keep said careful watch over the class and kind of timber furnished plaintiff for propping said room.

"*Sixth:* Plaintiff further alleges that it was the duty of the said John Mayer, and John Mayer doing business as The Katy Coal Company, to employ a mining boss, and that they did employ the said defendant, Joe Gladdis, as such mining boss, whose duty it was to supply plaintiff with sufficient prop timber of suitable length, quality and size for the room or place where it was to be used, and that said timber should be kept at easy access to plaintiff, but said prop timbers were not supplied, and that the defendants, John Mayer and John Mayer doing business as The Katy Coal Company, knew and were negligent in that they knew that said prop timber was not so supplied, as they were by law required to do.

"*Seventh:* Plaintiff now complains and alleges that, by reason of the fault, negligence and carelessness of the defendants, and each of them, he has been greatly and permanently damaged. . . ."

Considering nothing but the face of the pleading, it is manifest that it specifies three grounds of negligence: first, furnishing defective prop timbers, which were insufficient to sustain the weight of the roof of the room; second, failure to inspect prop timbers furnished; and third, failure to furnish prop timbers. The defendants say the sixth paragraph of the petition is consistent with paragraphs 3 and 4, which is true. There is no inconsistency between allegations that prop timbers which were furnished were defective, and allegations that a sufficient supply of prop timber of proper length, quality and size was not furnished. That the sixth paragraph was designed to charge and did charge failure to supply at all a sufficient quantity of suitable prop timber, is made clear by the

Smart v. Mayer.

reference to the defendants' duty to keep such timber at a place easy of access by the plaintiff.

The accident occurred on Monday. The plaintiff testified that the height of his room was three feet four inches; that he needed props three feet four inches long for an unproped area of his room some twelve or thirteen feet wide by fifteen feet long; that he ordered props of Joe Gladdis, one of the defendants, and of Jackson, a driver, on Friday, Saturday, and again on Monday morning, but did not receive them; that he had no props in his room at the time of the accident; that a rock in the unpropped space fell on him and injured him; and that no props were broken by fall of the rock. Jackson testified that on Saturday and on Monday morning before the accident the plaintiff asked him to bring three-foot-four-inch props, and that he did not do so.

At the close of the plaintiff's evidence, the defendants moved to strike out the testimony in relation to there being no unused props in the room at the time of the accident as immaterial and contrary to allegations of the petition. The motion was properly overruled.

The plaintiff then amended his petition by dropping the charges of negligence relating to defective props and want of inspection, and rested liability on failure to furnish props. The amendment was wholly unnecessary. The court would have taken from the jury the charges abandoned by the amendment, because there was no evidence to sustain them, and the remaining charge was simply restated, in what, for all purposes of the law, was the same form as before, as appears by the following paragraphs of the amended petition:

"*Third:* That on or about the said 22d day of November, 1915, it was the duty of said John Mayer, trading and doing business as The Katy Coal Company, and Joe Gladdis, as mine boss, to supply plaintiff with and keep in easy access to him at his working place in said coal mine, sufficient prop timber of suitable length and size for the purpose of propping the roof of his said working place, or room therein.

"*Fifth:* That said defendants, omitting their duty to plaintiff, did, on or about said 22d day of November, 1915, willfully, unlawfully, carelessly and negligently fail and refuse to supply and keep in easy access to plaintiff, prop timber of suitable length and size for the purpose of propping the roof of said room, which plaintiff alleges was the direct and proximate cause of his said injury.

Smart v. Mayer.

"*Seventh:* That the injury to plaintiff was caused solely and wholly on account of the negligence and carelessness of said defendants, as herein alleged. . . ."

The defendants then demurred to the plaintiff's evidence on two grounds, stated in the defendants' brief as follows:

"(*a*) That the statute of limitations had run on the ground of negligence set out in the second amended petition.

"(*b*) That after appellee had claimed for two years that the injury resulted from the use of defective props, he was estopped from claiming he had no props."

The demurrer to the evidence was overruled. The defendants then asked for a continuance, which was denied. In support of the application for a continuance, counsel for the defendants stated that at a former trial of the case he had a witness in attendance who would have testified that after the accident broken props were found at the place where the accident occurred, but counsel concluded the testimony was immaterial under the pleadings, and the witness was not presently available. The practice which the court is accused of sanctioning by allowing the amendment and refusing the continuance is discussed in the defendants' brief as follows:

"If this practice can be pursued, then no man is safe to attempt to defend a lawsuit. Issues may be made, preparation made to disprove the issues, witnesses not be subpœnaed because their testimony is immaterial, and then upon trial an entirely new issue may be presented, the old issue abandoned, and the party be in the midst of a lawsuit with no opportunity to defend against the new issue. This changes lawsuits from settlements of rights, and offers success to the shrewd juggler, punishes honest pleaders, and offers a premium to the shrewder schemer. If this practice is permitted, honest and conscientious pleaders will withdraw from the profession, and leave the field open to those who believe that lawsuits should be won by him who deceives his adversary most."

There was a former trial of the action and a former appeal to this court (*Smart v. Mayer,* 103 Kan. 366, 175 Pac. 159). At the oral presentation of this appeal the court was invited to inspect the record of the former proceedings. While the propriety of the court's rulings, now complained of, may not be tested by reference to that record, the court has perused it with interest. It shows the trial of just one issue—failure to furnish props. There was no evidence whatever relating to defective props, or the subject of inspection. The plaintiff

Smart v. Mayer.

gave substantially the same testimony as at the second trial, and so did Jackson. The defendants met this testimony by testimony that props were found in the room after the accident, and the question whether or not the defendants furnished the plaintiff sufficient prop timber of suitable length and size for his working place, and kept such timber in a place easy of access by the plaintiff, was the only question submitted to the jury. Special questions bearing upon this issue were propounded to the jury, and the record is barren of any suggestion by counsel for defendants that the sole issue under the pleadings was defective props. When the case came to this court, the brief of the defendants contained the following:

"The plaintiff testified he had no props, and that it was necessary to prop his room . . . And the inference might be drawn from the evidence of P. H. Scott that there were no props . . . while the evidence of R. E. Welch , . ., and the evidence of defendant Joe Gladdis . . . was that there were props. Therefore this question was in dispute in this case."

The special questions propounded to the jury were answered, "We do not know," and the argument of the defendants was that those answers determined the dispute in their favor. This court stated the issue—failure to furnish props (*Smart v. Mayer*, 103 Kan. 366, 367, 175 Pac. 159), and disposed of the case, in blissful ignorance that the issue of defective props was the only one triable under the pleadings.

When the case came on for trial the last time, counsel for defendants expressed no surprise and made no objection when counsel for plaintiff, in his opening statement, said this:

"The evidence will show, gentlemen of the jury, that at the time and place the plaintiff was without props of suitable length and size for the purpose of propping the roof of his room; that he had ordered props of Joe Gladdis and the driver in this entry—the driver's name, I think, is Will Jackson; and that such props had not been supplied him or kept within easy access to Mr. Smart. . . .

"It is further contended by the plaintiff that there were no props at the particular point where the rock fell, and that he had none to place there, and the failure to furnish these props was the proximate cause of his injury."

Not until the evidence for the plaintiff was all in did it occur to the defendants that the matter of defective props

was the sole question for determination, and consequently that the time of the district court at two trials, and of this court on appeal, had been wasted in considering an issue not raised by the pleadings.

Leaving out of account the record of the case anterior to commencement of the second trial, the demurrer to the plaintiff's evidence was properly overruled, and the motion for continuance was properly denied.

The defendants answered the amended petition by pleading the statute of limitations. The basis of the plea was that a new issue had been injected into the case, which was not true.

The jury found specially that there was an unpropped portion of the roof of the plaintiff's room twelve by thirteen feet in extent; that the height of the room was three feet four inches; that the plaintiff was in need of from twelve to fifteen three-foot-four-inch props; and that he had ordered such props of Joe Gladdis and of Jackson. The jury also returned the following special findings:

"5. Were there any loose or unused props in plaintiff's room at the time of his injury? Answer: Yes.

"6. If you answer question 5 in the affirmative, state the number and length of said props. Answer: In our opinion there were loose props as follows: Eight 30-inch props, one 36-inch prop, and 45 caps."

Welch, a witness for the defendants, testified that after the accident he made a sketch of the room, from which he afterwards made a blueprint plat, which was introduced in evidence. He testified as follows:

"Q. I wish you would state now the number of props and the length of the props you found lying down. A. One, three foot six; three, three foot four; eight, three foot, and four or five cap pieces. I mean when I say cap pieces, small pieces of wood about an inch thick and about six inches long and three or four inches wide, used in connection with the props. They are used over the prop and under."

The court refused to set aside the sixth finding. The defendants say nobody testified there were any thirty-inch props in the room. The plaintiff says the jury did its best to state some figures on Welch's blueprint which were difficult to decipher. The blueprint has not been photographed, and the original has not been brought to this court. It will be noted that the jury did not attempt to give a positive answer to the

question.   Whatever Welch and his plat might say, the jury did not believe there were. any three-foot-four-inch props in the room, and conceding the finding was wrong in reference to thirty-inch props, it does not disclose passion or prejudice, or vitiate the general verdict.

There is nothing else of importance in the case, and the judgment of the district court is affirmed.