No. 35,654

WILLIAM H. SNYDER, *Appellee*, v. W. H. LASSEN, Special Administrator of the Estate of Garland H. Lichty, Deceased, *Appellant;* C. M. BEACHY, and THE SNYDER ICE CREAM COMPANY, *Appellees.*

(132 P. 2d 624)

Opinion filed January 9, 1943.

*Samuel E. Bartlett,* of Wichita, argued the cause, and *Robert C. Foulston, George Siefkin, Lester L. Morris, George B. Powers, Carl T. Smith, C. H. Mor-*

*ris, John F. Eberhardt* and *Paul H. White,* all of Wichita, were on the briefs for the appellant.

*W. A. Kahrs,* of Wichita, argued the cause, and *C. A. McCorkle, Robert H. Nelson* and *Henry L. Butler,* all of Wichita, were on the briefs for appellee C. M. Beachy.

*Glenn Porter,* of Wichita, argued the cause, and *Getto McDonald, Dwight S. Wallace, William Tinker* and *Arthur W. Skaer,* all of Wichita, were on the briefs for appellee William H. Snyder.

*Claude I. Depew, W. E. Stanley, Lawrence Weigand* and *William C. Hook,* all of Wichita, were on the briefs for appellee Snyder Ice Cream Company.

The opinion of the court was delivered by

ALLEN, J.: This was a suit in equity by a minority stockholder against the president and general manager of a corporation for an accounting, to recover money alleged to have been misappropriated and to enforce a lien on the stock of such defendant. As will appear, other parties were joined as defendants.

Garland H. Lichty died September 7, 1941. For a number of years prior to his death Lichty was president and general manager of the Snyder Ice Cream Company and had complete control of the corporation. In 1934 Lichty purchased 155 shares of stock in the company, and at that time he borrowed $26,000 from defendant Beachy. As security Lichty assigned and delivered to Beachy the 155 shares of stock in the company. Lichty held a life insurance policy for $10,000 payable to his estate which was also assigned to Beachy as additional security for indebtedness due Beachy. From time to time Lichty made payments on the debt and also borrowed additional sums from Beachy. Lichty disposed of part of his stock and at the time of his death owned 135 shares in the company.

On October 9, 1940, the plaintiff Snyder, a minority stockholder, brought suit against the Snyder Ice Cream Company, Garland H. Lichty and C. M. Beachy. The petition alleged the wrongful and fraudulent withdrawal of money of the corporation by Lichty, prayed for an accounting and that the indebtedness found to be due be declared to be a first and prior lien on the stock owned by the defendant Lichty. It also contained allegations which plaintiff deemed necessary in a suit by a minority stockholder.

Trial was had and in July, 1941, the court found and decreed Lichty owed the defendant company $11,927.26, and that Beachy was entitled to a first and prior lien on Lichty's stock in the amount of $16,538.64, with interest. Thereafter, and for reasons not here material, the judgment so entered was set aside and a new trial granted. Plaintiff was given time to file an amended petition.

Thereafter plaintiff filed his second amended petition. To this amended petition defendant Beachy filed an answer and a cross petition.

In the cross petition Beachy alleged sometime subsequent to April 9, 1941, Lichty by an instrument in writing transferred all his right, title and interest in the 135 shares of stock to Beachy, and that Beachy was the owner of such stock and entitled to a transfer of the stock on the books of the company. The instrument referred to reads as follows:

"THIS AGREEMENT, made and entered this —— day of March, A. D., 1941, by and between C. M. Beachy of Wichita, Kansas, and Garland H. Lichty, of Wichita, Kansas;

"WITNESSETH: That in consideration of the mutual promises and covenants herein contained it is agreed between the parties hereto as follows:

"Garland H. Lichty hereby assigns, transfers and sets over to C. M. Beachy all the right, title and interest which he now has or may hereafter acquire in the following shares of stock of the Snyder Ice Cream Company of Wichita, Kansas, to wit:

(List of certificates)

Said shares of stock shall become the absolute property of C. M. Beachy.

"In consideration thereof, C. M. Beachy releases Garland H. Lichty from any and all liability on a certain note in the principal sum of $26,000 signed by Garland H. Lichty dated July 23, 1934, payable to the order of C. M. Beachy on or before July 23, 1942, secured by the certificate of stock above mentioned.

"C. M. Beachy also releases and discharges Garland H. Lichty from any liability on a certain other note of December 31, 1940, in the principal sum of $1,050 payable to the order of C. M. Beachy at Wichita, Kansas, one day after date.

"C. M. Beachy shall retain the above described notes until litigation instituted by William H. Snyder against the said Garland H. Lichty, C. M. Beachy, and others is finally terminated and ended.

"This constitutes the entire agreement between the parties and shall not be modified or changed except in writing signed by the parties hereto.

"IN WITNESS WHEREOF, the parties hereto have executed this instrument in triplicate the day and year first above written.

C. M. BEACHY,
GARLAND H. LICHTY."

As above stated, Garland H. Lichty died on September 7, 1941. Carl H. Smith was appointed special administrator of the Lichty estate. Upon the resignation of Smith, W. H. Lassen was appointed special administrator. By motion in the district court Lassen suggested the death of Lichty and asked that the cause be revived in the name of such administrator. On November 7, 1941, the court entered an order directing that the cause be revived

against the administrator. Thereupon the administrator filed an answer to plaintiff's petition, also a reply to the answer, and an answer to the cross petition of defendant Beachy. It appears from the answer to the cross petition so filed that on October 1, 1941, the administrator filed a separate action in the district court against Beachy and The Snyder Ice Cream Company wherein the administrator claimed to be the owner of and entitled to the immediate possession of the 135 shares of stock pledged by Lichty to the defendant Beachy.

The court made findings of fact and returned conclusions of law. We quote pertinent paragraphs from the conclusions entered by the court:

"1. Plaintiff is entitled to judgment against William H. Lassen, special administrator of the estate of Garland H. Lichty, deceased, in the sum of $11,927.66, with interest at the rate of 6 percent per annum from the 30th day of July, 1941.

"2. Said judgment is hereby declared to be a first and prior lien upon the 133 shares of stock of the Snyder Ice Cream Company standing in the name of the said Garland H. Lichty upon the books of said company and also the one share of stock standing in the name of L. E. Dick, and the one share of stock standing in the name of Carl T. Smith, on said books.

"3. In the event said amount is not paid within sixty days after judgment is rendered herein, execution issue and said 135 shares of stock be sold and the proceeds of said sale be applied, first, to the payment of said $11,927.66, and the balance thereof returned into court for distribution among the defendants as their interest may appear.

"7. The said Garland Lichty was indebted to C. M. Beachy prior to the transfer of the 135 shares of stock to C. M. Beachy in the sum of $16,558.48, together with interest from April 8, 1941, subject to the lien above mentioned in Conclusion No. 2, of the Snyder Ice Cream Company, on said stock.

"9. At the time the agreement or assignment between Garland Lichty and Beachy was executed, Beachy was chargeable with notice that the company had a lien upon said 135 shares of stock to the extent of the amount due the company from Lichty.

"10. The agreement or assignment of Lichty to Beachy of 135 shares of stock was a fair transaction and by virtue thereof the stock was transferred to Beachy.

"11. The special administrator, William H. Lassen, is entitled to the insurance policy in the principal sum of $10,000 on the life of Garland H. Lichty which is held by Beachy and tendered into court.

"12. The special administrator has no right, title or interest in and to said 135 shares of stock.

"14. The offer of C. M. Beachy referred to in Finding of Fact No. 34 is binding on said defendant and said defendant is ordered on the final conclusion of this action to make said deposit in trust for said heirs as provided in said offer."

Judgment was entered in accordance with the findings and conclusions of the court. This appeal followed.

1. The first question raised is stated in appellant's brief as follows:

"Where a stockholder in his own name brings suit to compel the managing officer of a corporation to repay money secured from the corporation and bases his right to recover upon the ground that the managing officer controls the corporation and a demand would be fruitless, and where the defendant dies and the plaintiff thereby became the chief executive officer of the corporation, can plaintiff, upon revivor, recover in his own name?"

This statement is clarified by the further statement:

"To recapitulate: Plaintiff had a cause of action until the death of Lichty. Lichty owed the corporation money. It was shown by the books and records of the company. The indebtedness was admitted in the first trial; it was admitted in the second trial. While there might be some question as to whether the indebtedness constituted a lien on Lichty stock, and whether such lien was prior to [or] subsequent to the lien under the Beachy pledge, there is not the slightest doubt but that The Snyder Ice Cream Company was entitled to the money which had unlawfully been taken from it. But that was the corporation's cause of action—plaintiff could not sue thereon except on pleading and proof that the corporation could not or would not act in asserting such cause of action. The cause of action in the plaintiff having abated on death of the defendant, it could not be revived in the stockholder's name thereafter."

At the first trial Lichty testified and admitted his indebtedness to the company. As such indebtedness was admitted by appellant on the second trial, and no contention is made that a payment of the judgment would not be a full acquittance, it would seem to be no concern of appellant whether the money was recovered by the company in an action brought by the company or in an action on behalf of the company by a minority stockholder.

Moreover, the administrator having moved the revivor of the action in his name as special administrator, having filed the various pleadings above set out, having participated in the trial of the lawsuit, the administrator is not in a favorable situation to contend that the entire proceedings since the death of Lichty are a nullity.

After the death of Lichty and the appointment of Lassen as special administrator, plaintiff filed an amended petition. It is not contended that the original petition did not state a cause of action, or that the amended petition in anywise changed the cause of action stated in the original petition. The filing of an amended petition is not the filing of a new action. The amendments relate back to the beginning of the action.

In *Brown v. Galena Mining and Smelting Co.*, 32 Kan. 528, 4 Pac. 1013, it was held as stated in the syllabus:

"4. The pleadings all relate to the time of the commencement of the suit, the same as if filed at that time, and the rights of the parties are to be determined as they existed when suit was commenced.

"5. An amended petition in a suit stands in the place of and as a substitute for the original petition, which is superseded by it, and must be based on the facts, and causes of action, as they existed at the time the original petition was filed; and if a right of action did not exist when the original petition was filed, one cannot be created by filing an amended petition."

In *Kerr v. Carson*, 133 Kan. 289, 290, 299 Pac. 929, it was stated:

"This court has held that if the original petition, although informally and defectively, states facts which aided by reasonable inference constitutes a cause of action, an amendment only amplifying or making more specific the allegations in the petition will relate back to the beginning of the action. (*Bradley v. Pinney*, 77 Kan. 763, 93 Pac. 585; *Railroad Co. v. Sweet*, 78 Kan. 243, 96 Pac. 657; *Fox v. Turner*, 85 Kan. 146, 116 Pac. 233; *Ballard v. Railway Co.*, 95 Kan. 343, 148 Pac. 764; *Smart v. Mayer*, 107 Kan. 203, 191 Pac. 273.)"

Such amended petition, in relating back to the time of the commencement of the action, must be treated the same as if it had been filed at that time. The revivor in the name of the administrator did not change the cause of action nor the object for which the suit was brought. The cause of action survived the death of Lichty (G. S. 1935, 60-3202), was duly revived (G. S. 1935, 60-3208), and the judgment was for the benefit of the corporation. Obviously there is no merit in the contention.

2. It is next contended that the appellant was entitled to a jury trial in the replevin case and that the cross petition of Beachy should have been dismissed.

That the action by the minority stockholder was a suit in equity admits of no doubt.

In 13 Fletcher on Corporations, section 5944, it is stated:

"The stockholders' suit is always one in equity, at least unless otherwise provided by statute. A stockholder cannot sue, as a representative of the corporation, by bringing an action at law, notwithstanding the corporation could have recovered in an action at law. Even where the only relief allowable is a recovery of damages the suit is nevertheless one in equity and not an action at law. If the action is brought as one at law, however, it will, at least in some jurisdictions, be treated as one in equity. The action cannot be converted from one in equity to one at law by any defenses set up by the defendants."

In *Brush v. Boyer*, 104 Kan. 168, 169, 178 Pac. 445, the sole question was whether the trial court erred in denying defendant's request for a jury trial. It was there stated:

"Plaintiff's cause of action was purely equitable; the mere fact that he asked in the alternative to recover the value of the property in case the defendants had put it out of his power to make a good conveyance, did not change the character of the action. In actions for the specific performance of a contract it is the well-established practice to ask, in the alternative, for money damages in the event the court finds it inequitable or impossible to compel specific performance. (citations) In all such cases the action is purely equitable, and the court has power to grant full relief. . . . Nor could the defendant, by filing a cross petition asking for a money judgment, change the nature of plaintiff's cause of action. The defendant was not, as a matter of right, entitled to a jury."

It is a well-settled principle of equity jurisprudence that where a court of equity has obtained jurisdiction of a controversy on any ground it will retain such jurisdiction for the purpose of administering complete relief and doing entire justice with respect to the subject matter. (*Martin v. Martin,* 44 Kan. 295, 24 Pac. 418; *Holmes v. Holt,* 90 Kan. 774, 136 Pac. 246.)

In *Bank Savings Life Ins. Co. v. Schroll,* 141 Kan. 442, 41 P. 2d 731, it was held, as stated in the syllabus:

"As between courts of concurrent jurisdiction the one which first acquires jurisdiction may draw to itself all issues between the parties which fairly inhere in the action before it, and may enjoin the parties from litigating the questions elsewhere during the pendency of the action." (Syl. ¶ 2.)

See, also, *McKinney v. Landon,* 209 Fed. 300; *Ewing v. Mallison,* 65 Kan. 484, 70 Pac. 369; *Juhlin v. Hutchings,* 90 Kan. 618, 135 Pac. 598; *City of Hutchinson v. Hutchinson Gas Co.,* 125 Kan. 346, 264 Pac. 67; *Railway Co. v. Love,* 61 Kan. 433, 59 Pac. 1072; *O'Loughlin v. Overton,* 68 Kan. 92, 74 Pac. 604; *Brown v. Stuart,* 90 Kan. 302, 133 Pac. 725; *Correll v. Vance,* 127 Kan. 840, 275 Pac. 174.

Clearly appellant was not entitled to a jury trial.

3. Under the instrument in writing dated the——day of March, 1941, hereinbefore set out, did the absolute property interest in the intangibles represented by the stock certificates pass to Beachy?

The court found that this document was signed by Lichty sometime between May 1, 1941, and July 1, 1941, and was delivered to Beachy; that it was also signed by Beachy at a date not clear from the evidence, and that the genuineness of the signatures was not questioned.

Prior to that date Lichty owed Beachy large sums of money, and had delivered the stock certificates to Beachy as security for the indebtedness. The instrument or document of title recited that Lichty

"hereby assigns, transfers and sets over" to Beachy the stock certificates that were pledged, and stated that the shares "shall become the absolute property" of Beachy. In consideration of the transfer it was recited that Beachy released Lichty from liability on the notes representing the indebtedness.

In the cross petition filed by Beachy it was alleged that on September 18, 1941, Beachy offered to pay to the defendant corporation the indebtedness found by the court that Lichty owed the company upon condition the 135 shares of stock pledged to Beachy should be transferred to him on the books, but that the secretary refused to make the transfer. It was further stated, "This defendant at this time offers to pay the sum so found due by the court upon the transfer of said stock to him, or his nominees."

The certificates of stock were in the possession of Beachy at the time the instrument in writing purporting to transfer the property in the shares to Beachy was signed. An agreement entered into by a pledgor and pledgee to transfer the title and ownership in the property pledged to the pledgee, when free from fraud or oppression, is valid.

We quote from Restatement, Security, § 55 and *Comment a* thereunder:

"(2) An agreement after the creation of a pledge by which the pledgor and pledgee agree that the pledged chattel is to be retained by the pledgee in whole or in part satisfaction of the claim of the pledgee is valid if the pledgee sustains the burden of showing that the bargain is free from fraud and oppression. . . .

"Subsequent to the creation of a pledge the pledgee's ability to inflict an oppressive bargain upon the pledgor is greatly diminished although not wholly absent. The pledgor and pledgee should not be prevented from making a bargain by which the pledged chattel can be taken in whole or in part satisfaction of the pledgee's claim. Such a bargain will be upheld so long as the pledgee is in a position to show that the bargain is free from fraud or oppression.

"*Illustrations:* 2. A pledges an automobile to B as security for a loan. On default A contracts with B that B can keep the car in satisfaction of the debt. A thereafter repudiates this agreement and tenders the amount of B's claim. B refuses the tender and A sues him for conversion. A alleges no unfairness in the bargain between him and B. A cannot recover judgment against B for the value of the car."

In conclusion No. 10 above quoted the trial court found that the agreement or assignment "was a fair transaction and by virtue

thereof the stock was transferred to Beachy." The finding was supported by testimony in the record.

As a result of the sale and transfer of the property the obligation of Lichty to Beachy was satisfied as stated in the written instrument. The obligation having been satisfied, the tender by the administrator to Beachy of the amount of the debt was without legal significance. Upon satisfaction of the debt due Beachy the pledgor Lichty was entitled to a redelivery of the insurance policy pledged as additional security. (41 Am. Jur., Pledge and Collateral Security, sec. 75.) Upon the death of Lichty his administrator was entitled to the policy and the court so found. (See finding 11, above quoted.)

As above stated, at the time the contract of sale was executed the certificates of stock were in the possession of Beachy. Upon execution of the instrument by Lichty and delivery of the same to Beachy, the property in the shares passed to Beachy. While the trial court found that the instrument was signed by Beachy his signature was not necessary to complete the sale.

Under the bylaws the corporation had a lien on the stock owned by Lichty for the debt Lichty owed the company. When Lichty sold the stock, Beachy, as purchaser, took the stock subject to the lien. Under the judgment unless the debt that Lichty owed the company is paid in sixty days after judgment the stock is to be sold, the proceeds to be applied in payment of such obligation, and the balance, if any, to be distributed as directed. If Beachy pays the debt found to be due from Lichty to the company within sixty days after spreading of the mandate in the cause he will be entitled to have a transfer of the stock to him on the books of the company.

The judgment is affirmed.

HARVEY, J., dissents.