No. 41,245

Albert J. Nelson, *Appellee*, v. M. L. Robinson and Katie M. Robinson, his wife, *Appellants*.

(336 P. 2d 415)

March 7, 1959.                                                      Opinion filed

*Corwin C. Spencer*, of Oakley, argued the cause, and *C. A. Spencer* of Oakley, was with him on the briefs for the appellants.

*Leon N. Roulier*, of Colby, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

Parker, C. J.: This was an action to cancel a written contract for the sale and purchase, on what is commonly known as a crop payment plan, of an improved section of land in Thomas County, Kansas. The defendants appeal from an adverse judgment and the overruling of their motion for a new trial.

The contract, executed on September 18, 1952, provided for a sale of the land in question from plaintiff, Albert J. Nelson of Thomas County, to defendants, M. L. Robinson of Lakin, Kansas, and Katie M. Robinson of Denver, Colorado, who were husband and wife, for the sum of $48,000.00, of which $2,000 was to be paid in cash on execution of the contract, $8,000 on or before December 31, 1952, and the balance of $38,000.00, with interest at four per cent per annum, by paying Nelson a one-fourth share of any and all crops grown or produced on the land, including all rentals received for pasture of livestock thereon, through a designated escrow agent.

The contract also provided that all payments under its terms were to be made to the escrow agent and were to be applied first to accrued interest and then to the unpaid balance of the purchase price and, if interest was not paid by crop or rental share, such interest was to be paid in any event on or before December 1st of each year; that at least two hundred acres of the land must be put into cash crop each year unless otherwise agreed by the parties; that the Robinsons should make prompt and accurate accounting to Nelson; his agent or assigns, for all crops produced on the land upon the completion of the harvest thereof and at such other times as Nelson might demand; that total payments made should not exceed the sum of $10,000 in any one calendar year; and that the Robinsons should pay all taxes lawfully levied against the real estate as and when due. It also contained express stipulations to the effect that time was of the essence of the agreement and if Robinson failed to pay the balance of the purchase price with interest thereon as and when it became due and payable, as therein provided, or failed to pay taxes levied against the real estate, or failed to perform any of the covenants therein required of them Nelson, at his option, could declare the contract forfeited and cancelled, in which event he would be entitled to retain all payments theretofore made under its terms as and for liquidated damages and as rental and to have returned to him the deed to the real estate, in possession of the escrow agent, whereupon the Robinsons would relinquish possession of such real estate and every part thereof without further notice or demand.

Plaintiff commenced this action on December 24, 1957, by filing a petition the sufficiency of which, from the standpoint of stating a cause of action for cancellation of the contract, is not in question. He made the contract, on which he had endorsed all payments claimed by him to have been made under its terms, a part of such pleading and, among other things, asserted he was entitled to its cancellation and forfeiture because the defendants had failed, as therein required, (1) to pay the interest due on December 1, 1957; (2) to pay the first half of taxes due on the land on December 20, 1957; (3) to make an accounting of crops produced on the land upon the completion of harvest during the crop year of 1957; and (4) to pay him the approximate sum of $958, which he alleged to be one-fourth of the amount ($3835) received by them, as soil bank payments by reason of having placed such land in the Federal

Acreage Reserve Program. In the prayer of the petition plaintiff asked for cancellation and forfeiture of the contract, possession of the real estate therein described, and for any and all other relief the court might deem just and equitable.

In their answer to the petition defendants admit execution of the contract attached to the petition; deny they had violated any of its terms as charged by the plaintiff; allege full performance in accord with its terms; admit making all payments endorsed on the contract; point out that such endorsements failed to include the $2,000 paid on the date of the execution of the contract; and assert that the sum total of all payments of principal and interest, made under its terms, amounted to $18,644.85.

Under further allegations of their answer defendants state that on December 30, 1957, which it is to be noted was subsequent to the date of the commencement of this action, they tendered and paid to the escrow agent $961.16 in payment of the balance of the 1957 interest then due but were later informed plaintiff had directed such agent not to receive that payment; assert they have paid all taxes assessed against the property from the date of the execution of the contract down to and including the last half of the 1956 taxes; disclose that on December 31, 1957 (also after the date of the commencement of the action) they paid the first half of the 1957 taxes, referred to in the petition; aver that they are now in possession of the real estate and have made lasting and valuable improvements thereon (describing them); deny plaintiff is entitled to any part of the soil bank payments from said land so long as two hundred acres or more is retained for cash crops, but tender one-fourth of all such payments received by them if their position plaintiff is entitled to no part thereof is not upheld; deny they have failed to render an accounting, as provided for by the contract; admit that during the crop year of 1957 milo in an amount approximating 4,873 bushels was raised on the land, but assert such grain was wet and in no condition for marketing, hence they are in no position to render an accurate accounting thereof; assert plaintiff is estopped from claiming strict performance of the contract insofar as time of payment is concerned in that he had theretofore waived the time of payment of both interest and taxes by accepting payments after they became due and payable; tender into court all past due payments and interest on the contract; and pray that plaintiff recover nothing in the action and that all costs incurred therein be assessed against him.

In his reply plaintiff denies each and every allegation and averment of new matter stated in the answer.

With issues joined as related the court proceeded to hear evidence offered by the respective parties and arguments by counsel. At the close of the trial it stated in substance the facts disclosed by the evidence did not justify a strict forfeiture of the contract but, in the exercise of its jurisdiction as a court of equity, warranted foreclosure of that instrument as an equitable mortgage. It then rendered judgment accordingly.

The journal entry of judgment, which is approved by counsel for the parties and is on file in this court, includes most of the findings of fact made by the trial court as well as the judgment and should be quoted at some length. Pertinent portions thereof read:

"The Court, after hearing all of the evidence and the argument of counsel, finds that this suit was filed on December 24, 1957, and that the defendants were at that time in default on the contract sued on herein; that the defendants were at that time twenty-four (24) days in default on payment of interest, and four (4) days in default on payment of the real estate taxes.

"The Court further finds that a strict forfeiture of the contract should not be allowed and that this action should be treated as a foreclosure in equity, and that the plaintiff under the contract is the holder of an equitable mortgage against said real estate.

"The Court further finds that less than one-third (⅓) of the purchase price has been paid; that the original sale price under the contract is $48,000.00; that the balance due on principal is $36,069.66; that the accrued interest to December 30, 1957, is $961.16; that the interest which has accrued from December 30, 1957, to this date is $331.80; that the total amount due under said equitable mortgage is $37,362.62, plus interest at the rate of four (4) per cent per annum from this date.

"The Court further finds that said equitable mortgage should be foreclosed and that the period of redemption should be set as six (6) months from this date unless the defendants shall pay into court within ten (10) days from this date the sum of $1,918.16 (this amount includes the $961.16 delinquent interest, above mentioned, and $957 which the trial court found in its oral findings was the plaintiff's share, under the terms of the contract, of the 1957 soil bank payment received and retained by the defendants); that in the event that said amount is paid into court by said date, then the period of redemption shall be extended to eighteen (18) months and shall expire on September 24, 1959, at 12 o'clock noon.

"The Court further finds that the contract, which is hereby treated as an equitable mortgage, covers the following described real estate situated in Thomas County, Kansas, to-wit:

[Describing it.]

"It Is, Therefore, Ordered, Adjudged and Decreed That the plaintiff have judgment in rem against the defendants, M. L. Robinson and Katie M.

Robinson, his wife, in the sum of $37,362.62, together with interest thereon at the rate of four (4) percent per annum from March 24, 1958.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED That the lien under the contract sued upon is treated as an equitable mortgage and is hereby foreclosed.

". . . That less than one-third (⅓) of the purchase price has been paid under said equitable mortgage, and the period of redemption is hereby set at six (6) months from this date.

". . . That if defendants shall pay into court for the benefit of the plaintiff the sum of $1,918.16 within ten (10) days from this date, then the judgment shall be reduced in the amount of said payment and the period of redemption shall be extended to eighteen (18) months, or until September 24, 1959, at 12 o'clock noon.

". . . That if redemption is not made as herein ordered and within the redemption periods, plaintiff shall be entitled to possession of said real estate, free and clear of any claim on the part of the defendants, and in the event of failure to redeem, and if possession is not surrendered, then plaintiff shall be entitled to a Writ of Assistance, directed to the Sheriff of Thomas County, Kansas, to place plaintiff in possession of said real estate; and that thereafter defendants shall be forever barred from any right, title or interest in and to all of Section Twenty-nine (29), Township Ten (10) South, Range Thirty-four (34), West of the 6th P. M., Thomas County, Kansas.

". . . That the costs of this action be, and they are hereby assessed against the defendants."

After rendition of the judgment defendants filed a motion for a new trial. This motion was presented, argued and denied. However, it should be noted, the journal entry reflecting the ruling on such motion discloses that in connection therewith the trial court made the following order:

"It is by the court further considered, ordered and adjudged that the judgment rendered in this cause on the 24th day of March, 1958, be and it is modified to provide that if, within ten (10) days from the date hereof, or in the event of an appeal herein to the Supreme Court of Kansas, and an affirmance of this judgment upon appeal, then, within ten (10) days from the date the mandate of the Supreme Court is spread of record in this court, the defendants shall pay into court for the benefit of the plaintiff the sum of $1,918.16, the provisions of said original judgment for a period of redemption to expire September 24, 1959, at 12 o'clock noon shall pertain; otherwise, said judgment shall remain in every respect as then rendered."

Inherent in all complaints raised by defendants on appeal is the general proposition that even if they were in default of payments, under the terms of the contract, the court had no power or authority in law or in equity to render the judgment it did because its action in doing so resulted in making a new contract for the parties. In taking this position defendants either overlook or ignore

numerous decisions of this court holding (1) that it is a well-settled principle of equity jurisprudence that where a court of equity has obtained jurisdiction of a controversy on any ground it will retain such jurisdiction for the purpose of administering complete relief and doing entire justice with respect to the subject matter (*Martin v. Martin,* 44 Kan. 295, 297, 24 Pac. 418; *Holmes v. Holt,* 90 Kan. 774, 136 Pac. 246; *Snyder v. Lassen,* 156 Kan. 230, 236, 132 P. 2d 624; *Faust v. Carson,* 158 Kan. 479, 485, 148 P. 2d 504); (2) that a trial court, sitting as a court of equity, is not obliged to render the specific decree prayed for, but may render a decree in accord with its own good judgment or discretion as to what justice demands, in view of the facts pleaded and evidence adduced (*Eberhardt Lumber Co. v. Lecuyer,* 153 Kan. 386, 390, 110 P. 2d 757; *Ames v. Ames,* 170 Kan. 227, 230, 225 P. 2d 85; *Mingenback v. Mingenback,* 176 Kan. 471, 482, 271 P. 2d 782; *Garnes v. Barber,* 180 Kan. 793, 798, 308 P. 2d 76); and (3) that in a suit in equity where a court has before it all the property involved, all the parties claiming rights thereto and their respective claims, it should complete the determination of their respective rights and make an appropriate decree so as to avoid future litigation, as far as possible (*Martin v. Martin,* supra; *Reed v. Bostleman,* 97 Kan. 633, 635, 156 Pac. 718; *Haston v. Citizens State Bank,* 132 Kan. 767, 775, 297 Pac. 1061; *Hawkins v. Smith,* 153 Kan. 542, 548, 111 P. 2d 1108; *Frey v. Willey,* 161 Kan. 196, 202, 166 P. 2d 659; *Hultz v. Taylor,* 163 Kan. 180, 187, 181 P. 2d 515; *Garnes v. Barber,* supra.)

We have no quarrel with decisions (*In re Estate of Hill,* 162 Kan. 385, 176 P. 2d 515; *State Highway Construction Contract Cases,* 161 Kan. 7, 166 P. 2d 728), cited by defendants, which hold it is not the function of courts to make new contracts for the parties but to enforce them as made. The trouble, from their standpoint, is that such decisions have no application to a situation where, by reason of the failure of one of the parties to comply with the terms of a contract, it becomes necessary to either forfeit the contract or in effect do away with it—as the court did in the instant case—because of existing conditions which would make strict performance with its terms unjust and inequitable.

The case at bar presents a good illustration of the reason for adherence to the equitable principles, to which we have heretofore referred. Here, since defendants admit they were in default in

payments of interest and taxes and the contract expressly provides that time is of the essence thereof, the trial court, except for the application of such principles, would have been required to decree strict forfeiture of the contract, whereas, by reason of their existence, it was authorized to apply them to the unusual conditions existing and to mold its decree in such manner as, in its opinion, would protect and conserve the equities of all parties litigant.

Some complaint is made by defendants of the trial court's ruling that one-fourth of the soil bank payments amounting to $958 and received by the defendants in July 1957, by reason of having placed a considerable portion of the involved land in the Federal Acreage Reserve Program, were payable to the plaintiff under the terms of the contract and hence should be considered as delinquent payments under its terms. We do not agree with defendants' contention the court was in error in thus construing the contract. Under its terms, as we construe it, defendants were to make payments to plaintiff of one-fourth of all income received from the land as such. We have no difficulty in concluding such payments were income received from the land and should have been paid to the plaintiff in the same manner and at the same time as other payments of income were required to be made under the terms of that instrument.

The principal contention advanced by defendants as a ground for reversal of the judgment is that equity does not permit cancellation of a real estate purchase contract, such as is here involved, which has been in existence for more than five years and three months, under the facts and circumstances disclosed by the evidence. In approaching this question it must be remembered that this court, from the cold printed pages of the record, is not in as good a position as the trial court, which had the opportunity of observing the attitude and demeanor of the parties while testifying in their own behalf as witnesses, to determine existing equities as between the parties.

It would add nothing to our reports and serve no useful purpose to here give a detailed recital of the evidence. It suffices to say that while it reveals defendants had paid a substantial amount on the purchase price at the time of the execution of the contract and had made lasting and valuable improvements on the land, it also discloses that they were in default in substantial amounts, totaling $1,918.16 for divers 1957 payments due and payable under the terms of the contract; that after making the down payments required

by the terms of that instrument in 1952 they had possession of the real estate in question for a period of approximately five years, during which time they paid only $1,930.34 on the $38,000.00 unpaid balance, which, it is to be noted, was only $12.18 more than their 1957 existing delinquency. The record further discloses prior differences respecting payments under the contract, including litigation with respect thereto and other circumstances from which the trial court might at least, by inference, have concluded the defendants were not making a bona fide effort to make payments on the principal in the manner contemplated and required by the terms of that instrument.

In the face of what has been heretofore stated it is asking too much of this court to hold as a matter of law that the evidence of record is so insufficient as to preclude a conclusion on the part of the trial court that equity permitted cancellation of the contract and warranted the rendition of a decree which, in its opinion, was right and just as between the parties, and we decline to do so. Moreover, under the existing facts and circumstances, we are not disposed to hold, as defendants suggest, that the trial court abused its judicial discretion in reaching the conclusions on which it based the involved judgment.

One final point requires attention. Defendants insist the plaintiff accepted delayed payments on the contract and for that reason could not insist upon prompt payment on the contract without prior notice of his intention to do so. There is such a rule and there are conditions and circumstances under which it may be invoked. However, the record in this case does not present such a situation. The most that can be said for defendants' position is that prior to the commencement of the instant action they made payments to the escrow agent on the contract out of time and that thereafter plaintiff silently acquiesced by accepting such payments from that escrow agent. Nowhere does the record make it affirmatively appear that he made any voluntary or intentional renunciation of his right to receive such payments within the time specified in the contract or led defendants to believe he was waiving those rights. Under such circumstances the general rule is that no mere indulgence or silent acquiescence can be construed as a waiver of rights under a contract. (*Long v. Clark*, 90 Kan. 535, 537, 135 Pac. 673; *Kliesen v. Mercantile Association*, 101 Kan. 138, 140, 165 Pac. 650; *Harpham Brothers Co. v. Perry*, 118 Kan. 457, 461, 235

Pac. 1039; *Proctor Trust Co. v. Neihart,* 130 Kan. 698, 705, 288 Pac. 574.)

We find nothing in the contentions advanced by defendants or in decisions cited in support of their position with respect thereto which warrants or permits a conclusion the trial court committed reversible error in this case. Therefore the judgment is affirmed.