Nos. 42,175, 42,176, 42,185, 42,230 (Consolidated)

COLORADO INTERSTATE GAS COMPANY, NORTHERN NATURAL GAS COMPANY, CITIES SERVICE GAS COMPANY, and KANSAS-NEBRASKA NATURAL GAS COMPANY, *Appellants* and *Cross-Appellees* v. THE STATE CORPORATION COMMISSION OF THE STATE OF KANSAS, *Appellee* and *Cross-Appellant*, SOUTHWEST KANSAS ROYALTY OWNERS ASSOCIATION, and PANHANDLE EASTERN PIPE LINE COMPANY, each a corporation, *Appellees*.

No. 42,038

SOUTHWEST KANSAS ROYALTY OWNERS ASSOCIATION, a corporation, *Appellee* and *Cross-Appellant* v. THE STATE CORPORATION COMMISSION OF THE STATE OF KANSAS, *Appellee*, PANHANDLE EASTERN PIPE LINE COMPANY, a corporation, *Appellee* and *Cross-Appellant*, CITIES SERVICE GAS COMPANY, *Appellant* and *Cross-Appellee*,

Northern Natural Gas Company, and Kansas-Nebraska Natural Gas Company, each a corporation, *Appellees* and *Cross-Appellants.*

(386 P. 2d 288)

Opinion filed November 2, 1963. (Consolidated cases.)

Opinion filed November 2, 1963. (No. 42,038.)

*Malcolm Miller,* of Wichita, argued the cause, and *L. M. Poe,* of Colorado Springs, Colorado, *Carl T. Smith* and *Stuart R. Carter,* both of Wichita, were with him on the briefs for appellant, Colorado Interstate Gas Company.

*Mark Adams,* of Wichita, argued the cause, and *Conrad C. Mount, John T. Grant, George E. Peabody* and *Charles V. Wheeler,* all of Oklahoma City, Oklahoma, *D. B. Lang,* of Scott City, *Lawrence I. Shaw, F. Vinson Roach* and *Patrick J. McCarthy,* all of Omaha, Nebraska, *Ray H. Calihan, Logan N. Green, Daniel R. Hopkins* and *Ray H. Calihan, Jr.,* all of Garden City, *Charles E. Jones, William I. Robinson, J. Ashford Manka, Clifford L. Malone, Mark H. Adams, II, John S. Seeber, Floyd E. Jensen* and *Joe Rolston,* all of Wichita, were with him on the briefs for the appellants, Northern Natural Gas Company, a Corporation and Cities Service Gas Company, a Corporation.

*Douglas Gleason,* of Ottawa, argued the cause, and *James D. Conway* and *Elmer J. Jackson,* both of Hastings, Nebraska, *Thomas E. Gleason* and *Jules V. Doty,* both of Ottawa, and *Hollis B. Logan,* of Topeka, were with him on the briefs for the appellant, Kansas-Nebraska Natural Gas Company, Inc.

*Richard C. Byrd,* of Ottawa, argued the cause, and *J. Robert Wilson, John D. Townsend, Robert C. Londerholm, Charles R. Escola, Charles C. McCarter, Rex A. Jemison, Carl L. Wettig,* and *Glenn D. Young,* all of Topeka, were with

him on the briefs for the appellee, The State Corporation Commission of the State of Kansas.

*Robert T. Cornwell,* of Wichita, argued the cause, and *David W. Buxton, Wayne E. Coulson, Paul R. Kitch, Dale M. Stucky, Donald R. Newkirk, Gerrit H. Wormhoudt, Philip Kassebaum, John E. Rees, Robert J. Hill, Willard B. Thompson, Hugo T. Wedell,* and *Homer V. Gooing,* all of Wichita, *A. E. Kramer* and *Bernard E. Nordling,* both of Hugoton, were with him on the briefs for the appellee, Southwest Kansas Royalty Owners' Association.

*Chas. Vance,* of Liberal, argued the cause, and *C. C. Linley,* of Liberal, *Wendell J. Doggett* and *C. A. Conoley,* both of Kansas City, Missouri, and *Jeff A. Robertson,* of Topeka, were with him on the briefs for the appellee, Panhandle Eastern Pipe Line Company.

The opinion of the court was delivered by

HATCHER, C.: These appeals are from judgments rendered on petitions to review the orders of the State Corporation Commission determining the market demand for natural gas in the Kansas-Hugoton Gas Field for the six-months period beginning October 1, 1959, and extending through March 31, 1960, and also the monthly allowable for each month of such period.

The orders were litigated in two forums. The district court of Stevens County, Kansas, entertained separate petitions to review filed by Panhandle Eastern Pipeline Company (Panhandle) and Southwest Kansas Royalty Owners' Association (Royalty Owners'). They challenged the orders, contending that the determination of market demand and allowable production was unreasonably low. The district court of Finney County, Kansas, entertained separate petitions to review filed by Northern Natural Gas Company (Northern Natural), Cities Service Gas Company (Cities Service), Colorado Interstate Gas Company (Colorado Interstate), and Kansas-Nebraska Natural Gas Company (Kansas-Nebraska). They challenge the orders contending, among other things, that the determination of market demand and allowable production was unreasonably high. (The parties will hereinafter be identified as indicated in the parentheses.)

The separate petitions for review filed in the Finney County District Court were consolidated for hearing. The separate petitions for review filed in the Stevens County District Court were also consolidated. All the appeals involve the same orders and the same record. They will be considered in a single opinion.

The questions presented by these appeals were determined in *Colorado Interstate Gas Co. v. State Corporation Comm.,* 192

Kan. 1, 386 P. 2d 266 insofar as they challenge the Commission's orders for the reason that they are not supported by a substantial competent evidence; they violate the provisions of the Gas Conservation Act or the Commission's basic order; they constitute an interference with interstate commerce; they invade the province of the Federal Power Commission under the Natural Gas Act, or they violate the due process clause of the United States Constitution or impair the obligation of contracts. Undue repetition will be avoided if we incorporate that opinion here by reference as determinative of the issues mentioned. We do so.

There remains for determination the jurisdictional dispute between the two district courts, and the constitutionality and effect of G. S. 1961 Supp., 55-703, which amended G. S. 1949, 55-703.

On December 15, 1959, following the overruling of petitions for rehearing, Royalty Owners' filed petitions for judicial review of the market demand order and the October allowable order in the district court of Stevens County, Kansas. On December 16, 1959, Panhandle filed similar petitions for review in the same court. Subsequent thereto, Northern Natural, Cities Service, Colorado Interstate, and Kansas-Nebraska filed petitions for judicial review, respectively, of each of said orders in the district court of Finney County, Kansas. Thereafter, all six parties filed their several petitions for judicial review of each of the other monthly allowable orders, covering the period involved, in their chosen jurisdiction.

It would serve no useful purpose to review the various motions filed by the parties in an effort to bring all parties before the court of their preferred jurisdiction, or the orders in connection therewith.

It should be noted that the district court of Stevens County, subsequent to the hearing on the merits, ruled that the Commission's order is not subject to piecemeal review from case to case and court to court.

The district court of Finney County, subsequent to the hearing on the merits, ruled that each party was entitled to maintain a separate proceeding for review and that the only parties to the proceedings were those named in the captions of the petitions for review.

The district court of Stevens County held a hearing on February 13, 1960, at which Northern Natural, Cities Service, and Colorado Interstate did not appear, although they received notice. On March 10, 1960, the court entered its judgment in which it found:

"That the Report and Order dated November 10, 1959, and subsequent

allowable orders of the State Corporation Commission are based on substantial competent evidence and are lawful and valid. Said report and order makes reasonable provisions for an orderly process correcting inequities (existing for more than ten years and which have progressively increased) discriminating in favor of the correlative rights of producers and royalty owners in the Oklahoma Hugoton Gas Field and against those in the Kansas Hugoton Gas Field; as provided by the Statutes of Kansas, Section 55-703, 1959 supplement."

The judgment of the district court of Stevens County affirmed the orders in controversy.

The district court of Finney County held a hearing on February 23, 1960. Panhandle and Royalty Owners' were not permitted to participate because they had not filed petitions for review in that court. On May 26, 1960, the court entered its judgment holding valid the market demand order for the six-months period beginning October 1, 1959, extending through March 31, 1960. It further ordered that:

". . . the several monthly proration orders entered by the State Corporation Commission for October, 1959, monthly, through March, 1960, should be, and the same are hereby, reversed and set aside insofar as the net allowables there set forth are greater by virtue of underages, either canceled or carried forward as a result of the Commission's departing from its former method of determining allowables beginning May, 1956, to October 1, 1959; and such monthly proration orders entered by the State Corporation Commission for the months of October, 1959, through March, 1960, are affirmed insofar as such orders disclose market demand and current allowables without adjustment to runs as determined by the Commission and net allowable determined by adding underage or subtracting overage from current allowable, so long as such underage or overage accrued since October 1, 1959; . . ."

It would serve no useful purpose to take time and space to align the parties as they appear before this court with their numerous appeals and cross-appeals. We will proceed to determine the jurisdictional questions presented.

Before an action may be brought by any party to a proceeding resulting in an order by the Commission, a petition for rehearing must first be filed with the Commission under the provisions of G. S. 1949, 55-606. The statute provides further:

". . . Such action may be brought by any person aggrieved, whether or not such person was the applicant for rehearing, within thirty days after the denial of the petition for rehearing, or, if rehearing is granted, then within thirty days after the final decision by the commission. . . ."

Once the petition for rehearing is concluded, any person aggrieved, whether or not such person filed a petition for rehearing, may file a

petition for judicial review. One application for rehearing will suffice for all. The statute does not anticipate that the Commission need be troubled by petitions for rehearing on the part of all the parties or persons that may be interested in an investigation or hearing, or aggrieved by the order resulting therefrom.

The statute contemplates but one action or petition for review of an order of the Commission. It does not anticipate separate actions by separate parties in different courts where a single order is involved. Once a petition for review is filed in a Court of competent jurisdiction, all interested parties may intervene and protect their rights.

The parties interested in the hearing out of which the orders in this controversy grew are numerous and varied. Many are aggrieved. The reviewing court is not concerned with individual grievances of numerous parties or with resolving disputes between parties. Its sole responsibility is to review and determine the validity of the Commission's order.

The district court of Finney County was of the opinion that each party aggrieved by an order of the Commission was entitled to maintain a separate petition to review an order of the Commission and that such separate actions could be brought in any county of proper venue. The statute does not so provide. That part of G. S. 1949, 55-606, material to this question states:

"Any action for judicial review of any . . . order or . . . may be brought . . . in the district court of any county in the state wherein the property affected thereby is located, or, if the property affected thereby is located in different counties, then the jurisdiction shall lie in either of such counties. . . ."

If the property affected by the order is located in different counties, the jurisdiction to review the order will lie in either, not both. In *Kansas-Nebraska Natural Gas Co. v. State Corporation Commission*, 176 Kan. 561, 271 P. 2d 1091, it was held in paragraph 2 of the syllabus:

"The primary purpose and intent of creating a court of judicial review, as a part of the oil and gas conservation act, in which actions may be brought to review any rule, regulation, order or decision of the state corporation commission was: (*a*) To require interested parties to present their evidence and contentions to such commission; and (*b*) to eliminate the uncertainty and confusion which could, and probably would, result from the filing of numerous independent actions by the various parties affected by an act, or acts, of the commission, when in such independent actions the court would be deprived of

the benefit of the complete record on which the action of the commission was based."

The law is well settled that where there is concurrent jurisdiction in more than one court the court which first acquires jurisdiction retains it to the exclusion of another court which is requested or seeks to assume it. (*Hoard v. The Home State Bank,* 176 Kan. 624, 272 P. 2d 1054; *Shields v. Fink, Executrix,* 190 Kan. 17, 372 P. 2d 252; *Walker v. McNutt,* 165 Kan. 533, 196 P. 2d 163; *Charvat v. Moore,* 167 Kan. 336, 205 P. 2d 980.) The court first acquiring jurisdiction may draw to itself all the issues and enjoin parties from litigating them elsewhere. (*Graves v. National Mutual Cas. Co.,* 164 Kan. 267, 188 P. 2d 945.)

The district court of Stevens County first acquired jurisdiction to review the market demand order for the period beginning October 1, 1959, and extending through March 31, 1960, and the October and November, 1959, allowable orders. The district court of Stevens County could have drawn all the issues to it and enjoined the parties from proceeding in another court of concurrent jurisdiction.

The district court of Finney County was without jurisdiction to review the orders.

The 1959 amendment to the Gas Conservation Act being Chapter 237 of the Laws of 1959, now G. S. 1961 Supp., 55-703, is challenged on numerous constitutional grounds. It is first contended that the act is in violation of section 16, article 2, of the Constitution of the State of Kansas, which reads: "No bill shall contain more than one subject, which shall be clearly expressed in its title. . . ."

The title to the act reads: "An act relating to the production and conservation of natural gas; amending section 55-703 of the General Statutes of 1949, and repealing said original section."

The amendment which is subject to the challenge here is found in the last proviso of the act which reads:

". . . *Provided further, however,* That the provisions of this act shall not apply to any common source of supply in which the average open flow of all the producing wells therein is not in excess of seven hundred fifty thousand (750,000) cubic feet per day. *The commission in determining the market demand for gas from a common source of supply shall consider the reasonable current requirements for current consumption and use within and without the state, and such other factors, conditions, or circumstances that would aid in establishing the market demand.* (The italics identify the amendment which was added.)

The title to the act is broad enough to cover any provision relat-

ing to the production and conservation of natural gas. Insofar as the determination of market demand is material to the conservation of natural gas, it is included in a title relating to the production and conservation of natural gas.

A title is sufficient if it indicates clearly, though in general terms, the scope of the act. The more general the language of the title, the broader the subject matter of the act may be. It is not necessary that the title be an index, a synoposis, or an abstract of the entire act in all its details. The purpose of the title is to inform the legislature and the general public of the subject under consideration.

The contention that the act deals with unrelated subjects cannot be sustained. The determination of market demand is pertinent to the regulation of production and conservation of gas. In determining the market demand for gas from a common source of supply, the consideration of factors, conditions, or circumstances that would aid in establishing the market demand are germane to regulating production and conservation of gas.

Those who are interested in pursuing further the construction, purpose, and effect of section 16, article 2, of the Constitution of the State of Kansas should see *In re Sanders, Petitioner*, 53 Kan. 191, 36 Pac. 348; *Rathbone v. Hopper*, 57 Kan. 240, 45 Pac. 610; *State, ex rel., v. McCombs*, 129 Kan. 834, 284 Pac. 618; *City of Lawrence v. Robb*, 175 Kan. 495, 265 P. 2d 317; *State, ex rel., v. Kansas Turnpike Authority*, 176 Kan. 683, 273 P. 2d 198; *State, ex rel., v. Urban Renewal Agency of Kansas City*, 179 Kan. 435, 296 P. 2d 656; *State, ex rel., v. City of Wichita*, 184 Kan. 197, 335 P. 2d 786; and *Water District No. 1 v. Robb*, 182 Kan. 2, 318 P. 2d 387.

It is contended that the act constitutes an unlawful delegation of legislative authority.

The 1959 amendment (G. S. 1961 Supp., 55-703) did not delegate any additional authority to the Commission requiring new standards to guide it. Rather it designated standards which were appropriate for the Commission to use in exercising the authority previously granted. (G. S. 1949, 55-703.)

If the Commission was to determine market demand six months in advance, certainly it was necessary for it to consider the market demand without the state, as very little of the gas was sold within the state. The Commission was also obligated to consider "such other factors, conditions or circumstances" as would aid it in properly determining the market demand.

The determination of market demand under the provisions of G. S. 1961 Supp., 55-703, is chiefly for the purpose of determining when the Commission shall take jurisdiction of a gas field. The Commission shall exercise jurisdiction "whenever the available production of natural gas from any common source of supply is in excess of the market demands" and other conditions exist. In *Water District No. 1 v. Robb*, 182 Kan. 2, 318 P. 2d 387, it was held:

"While the legislature cannot delegate its constitutional power to make a law (Article 2, Section 1, Kansas Constitution), it can make a law which delegates the power to determine some fact or state of things upon which such law shall become operative." (Syl. 6.)

In *State, ex rel., v. Fadely,* 180 Kan. 652, 308 P. 2d 537, it was held:

"The legislature may not delegate its power to make laws but may enact a law in general terms which confers upon an officer or board administrative duties to enforce and apply the law, and, to accomplish that end, to ascertain the existence or non-existence of some future fact, event or condition which the officer or board is required to ascertain; but, the statute must prescribe reasonably clear standards by which those vested with the duty to make the statute operate will do so in the manner intended. Where, however, the discretion to be exercised relates to a police regulation for the protection of the public morals, health, safety or general welfare, and it is impossible or impracticable to provide such standards and to do so would defeat the legislative object sought to be accomplished, legislation conferring such discretion may be valid and constitutional without such restrictions and limitations." (Syl. 7.)

In *The State v. Railway Co.,* 76 Kan. 467, 92 Pac. 606, affirmed *Mo. Pac. Ry. Co. v. Kansas,* 216 U. S. 262, 54 L. Ed. 472, 30 S. Ct. 330, the court had under consideration the constitutionality of the Article 3, Chapter 84 of the General Statutes of 1901, creating a Board of Railroad Commissioners, now the State Corporation Commission. The statute placed upon the board the responsibility of determining a "reasonable charge for services rendered" by railroads. (G. S. 1901, Sec. 5981.) The term "reasonable charge" was not defined, nor were there any standards by which reasonable charges were to be determined. The court, in considering the general constitutionality of the act, held:

"The act does not delegate to the board of railroad commissioners legislative powers. The legislature in the exercise of its power to regulate and control public corporations, such as common carriers, may delegate to a board of railroad commissioners certain functions administrative in character which cannot well be performed by the legislature itself." (Syl. 2.)

G. S. 1961 Supp., 55-703 does not contain any unlawful delegation of legislative authority.

G. S. 1961 Supp., 55-703 does not violate the due process and equal protection clauses of the federal and state constitutions.

We stated in *Colorado Interstate Gas Co. v. State Corporation Comm.*, 192 Kan. 1, 386 P. 2d 266, that the Commission was obligated to consider evidence of all factors which were pertinent to the determination of market demand under the provisions of G. S. 1949, 55-703. This necessarily included all factors mentioned in the last proviso of G. S. 1961 Supp., 55-703. The Commission's abandonment of the practice of deducting past monthly underages from current allowables was also approved. The constitutional objections raised in connection with the two matters were fully considered and determined. It would serve no useful purpose to repeat here what was said in that case.

The question is presented, if the Commission was permitted or obligated under the provisions of G. S. 1949, 55-703, to consider the factors mentioned in the last proviso of G. S. 1961 Supp., 55-703, in determining market demand, why the amendment? An examination of the record and the contentions made in the briefs clarify the matter.

The Commission for many years had considered only the nominations of the pipeline companies in determining market demand. It finally became apparent to the Commission that its method of determining market demand and calculating allowables had no relation to the actual market demand in the field, and that the field was being detrimentally affected by its restrictive determinations and calculations. When the Commission attempted to make corrections by considering all material factors, its orders were set aside by a district court.

The legislature desired to make it crystal clear to both the Commission and the courts, that the Commission was to consider all pertinent factors in making its calculations and determinations.

The judgment of the district court of Finney County is reversed with instructions to dismiss the petitions for review of the orders described herein.

The judgment of the district court of Stevens County is affirmed.

APPROVED BY THE COURT.