No. 43,530

Cities Service Gas Company, a Corporation, *Appellant,* v. The State Corporation Commission of the State of Kansas, Richard C. Byrd, Chairman, Alvin F. Grauerholz and Harry G. Wiles, As Members of Said Commission, and Their Respective Successors in Office, and The Woodson Pipe Line and Producing Company, a Corporation, Intervenor, *Appellees.*

(391 P. 2d 74)

Opinion filed April 11, 1964.

*George E. Peabody,* of Oklahoma City, Oklahoma, argued the cause, and *Conrad C. Mount* and *Gordon J. Quilter,* of Oklahoma City, Oklahoma, and *Roy L. Cole,* of Garnett, and *Mark H. Adams, Charles E. Jones, Wm. I. Robinson, J. Ashford Manka, Clifford L. Malone, Mark H. Adams, II, John S. Seeber, Philip L. Bowman* and *Joe Rolston,* all of Wichita, were with him on the briefs for Appellant, Cities Service Gas Company.

*Robert C. Londerholm,* General Counsel, of Topeka, argued the cause and was on the briefs for Appellee State Corporation Commission of the State of Kansas.

*Stanley E. Toland,* of Iola, argued the cause, and *Frank W. Thompson,* of Iola, was with him on the briefs for appellee, The Woodson Pipe Line and Producing Company, a Corporation, Intervenor.

The opinion of the court was delivered by

FATZER, J.: This action was commenced by Cities Service Gas Company, pursuant to G. S. 1949, 55-606, for a judicial review of an order of the State Corporation Commission authorizing The Woodson Pipe Line and Producing Company to water flood a certain oil and gas lease in Anderson County. (G. S. 1949, 55-133, *et seq.*)

The appeal is from the judgment and order of the district court sustaining Woodson's motion to dismiss the action upon the ground that Cities Service failed to comply with G. S. 1949, 55-606, by filing its petition for rehearing with the commission within ten days from the date of the making of the commission's Order, Memorandum Opinion and Order, hereafter called order, and that the district

court was without jurisdiction of the alleged cause of action for judicial review. The correctness of that ruling is the sole question for appellate review.

The essential facts are stated: Woodson is the owner of the right to produce oil from a formation called the Squirrel Sand underlying certain land in Anderson County covered by the Buchanan lease. In 1936, Cities Service purchased the mineral rights to the Colony Sand formation which is situated below the Squirrel Sand formation under the Buchanan lease and other lands in the same vicinity. The two reservoirs are physically separated from each other by an impermeable shale barrier. In 1943, and at all times since, Cities Service has utilized the Colony Sand as an underground storage reservoir for gas as a material part of its integrated interstate gas pipe line system for the transportation of gas in interstate commerce.

In 1960 Woodson filed its application with the commission for a permit to water flood the Squirrel Sand underlying the Buchanan lease. Cities Service timely filed its objections to Woodson's application and also filed a petition to intervene in the proceedings. The petition to intervene was sustained, and extensive hearings were had on the issues on June 30, 1961, July 11, 12, and 13, 1961, and August 28, 29, and 30, 1961. On August 30, 1961, the record was closed and the commission took the matter under advisement.

The commission held the matter under advisement until April 25, 1962, when the subsequent facts, as shown by the stipulation of the commission, Cities Service and Woodson, chronologically occurred:

On April 25, 1962, the commission approved the order authorizing Woodson to water flood the Squirrel Sand underlying the Buchanan lease, and signed the official minutes authorizing the order to be issued.

On April 26, 1962, carbon copies of the order and commission minutes were sent to the commission's Oil and Gas Conservation Division in Wichita, Kansas, for mimeographing and mailing to all interested parties.

On April 30, 1962, the order was first released by the Oil and Gas Conservation Division when a photostat copy of the order was deposited in the United States mail at Wichita by the commission, addressed to Cities Service and to Woodson, which had stamped on the face thereof, "Mailed April 30, 1962." The order remained in the exclusive control and possession of the commission until it

was released by being placed in the United States mail at Wichita on April 30, 1962.

No official notice of the order was given to Woodson or Cities Service other than by such mailing by the commission, and neither company had any knowledge of the content of the order until each received its copy through the United States mail. Cities Service received its copy at Oklahoma City, Oklahoma, on May 2, 1962.

On May 9, 1962, Cities Service filed a document entitled "Petition for Rehearing" with the commission at its office in Topeka, and served a copy on Woodson on that date. No pleading was subsequently filed by Woodson with the commission.

On May 18, 1962, the commission entered its order overruling Cities Service's petition for rehearing, and on May 28, 1962, it caused a photostat copy thereof to be deposited in the United States mail addressed to Cities Service.

On June 15, 1962, Cities Service commenced this action by filing its petition in the district court for judicial review of the commission's order mailed April 30, 1962, and the order of May 18, 1962, overruling its petition for rehearing. The commission was named as the only defendant and summons was served upon the secretary at his office in Topeka.

On September 5, 1962, Woodson filed a motion to intervene in the action, which was sustained by the district court on September 28, 1962. Thereafter, Woodson filed its motion to dismiss the action upon the grounds heretofore set forth.

During the hearing on the motion to dismiss, Cities Service's Exhibit No. 1 was introduced into evidence, the material parts of which read:

"RULES OF PRACTICE

AND

"PROCEDURE BEFORE THE COMMISSION

"In Proceedings Under the Public Utilities Act, Motor Carrier "Act, Oil Conservation Act, Gas Conservation Act, "Kansas Securities Act, and Related Acts

.   .   .   .   .   .   .   .   .   .   .

"*State Corporation Commission*

"ARTICLE VII.—REHEARINGS

"82-1-87. Application for. All applications for rehearing shall be made within ten days after the determination or order of the Commission is made and served pursuant to Rule 82-1-8. The application for rehearing will be granted or denied by the Commission either with or without hearing and

argument thereon within ten days from the date the same shall be filed and if a rehearing is not granted within ten days, it shall be taken as denied. [Authorized by G. S. 1935, 66-106; Compiled, December 31, 1947.]

## "State Corporation Commission

### "ARTICLE II.—MATTERS APPLICABLE TO ALL PROCEEDINGS

"82-1-8. Service of papers, manner. Notices, motions, pleadings, orders or other papers may be served personally or by mail except where the statute prescribes a specific mode of service which shall be followed. Service upon an attorney of record will be deemed to be service upon the party. Service by mail shall be deemed to be completed two days after the mailing of the notice or document to be served. [Authorized by G. S. 1935, 66-106; Compiled, December 31, 1947.]

"82-1-9. Parties entitled to service. All persons, who have entered formal appearances in any proceeding, shall be served with all notices, motions, pleadings or orders filed or issued in said matter. [Authorized by G. S. 1935, 66-106; Compiled, December 31, 1947.]

"82-1-10. Orders of the Commission, when filed and when effective. All orders made by the Commission will be filed in the office of the Commission in Topeka. Orders of the Commission shall be deemed to become effective upon service pursuant to Rule 82-1-8 unless otherwise expressly provided in said order or by statute. [Authorized by G. S. 1935, 66-106; Compiled, December 31, 1947.]"

On October 8, 1962, the district court sustained Woodson's motion to dismiss the action upon the ground previously stated. We are of the opinion, based upon conclusions hereafter stated, that Cities Service's petition for rehearing was timely filed with the commission on May 9, 1962, and that the district court erred in dismissing the action for want of jurisdiction.

In 1931 the legislature declared in G. S. 1949, 55-601, *et seq.*, as amended, that the production of oil under such conditions as to constitute waste as therein defined, was unlawful, and the commission was given jurisdiction over all matters involving the application and enforcement of the act, and it was empowered to make and enforce rules, regulations and orders to carry out and make the act effective. (G. S. 1961 Supp., 55-604.) Provision was also made for an orderly and prompt judicial review of any rule, regulation, order or decision of the commission, and the pertinent part of the statute (G. S. 1949, 55-606) reads:

"Any action for judicial review of any rule, regulation, order or decision of the commission *may be brought against the commission in the district court* of any county in the state wherein the property affected thereby is located. . . . Before any such action may be brought . . . *a petition for rehearing shall first be filed with the commission within ten days from the date of the making of the . . . order, or decision in question. . . .* Such

action may be brought by any person aggrieved . . . within thirty days after the denial of the petition for rehearing, or, if rehearing is granted, then within thirty days after the final decision by the commission. . . . All actions brought under this section shall have precedence in any court and on motion shall be advanced over any civil cause of different nature pending in such court, and such action shall be tried and determined as other civil actions. . . ." (Emphasis supplied.)

A detailed analysis of the statute is unnecessary since that was done in *Jackson v. State Corporation Commission*, 183 Kan. 246, 326 P. 2d 280, *Colorado Interstate Gas Co. v. State Corporation Comm.*, 192 Kan. 1, 386 P. 2d 266, and *Colorado Interstate Gas Co. v. State Corporation Comm.*, 192 Kan. 29, 386 P. 2d 288. As is observed, the statute does not define the time at which an order is deemed "made," nor does it prescribe the mechanical procedures for the "making" of an order by the commission, nor does it prescribe a procedure for the "filing" or placing an order of record, nor provide when an order shall be made effective. In the absence of a definition in the statute itself, G. S. 1949, 77-201, *Second*, provides that words and phrases shall be construed according to the context and the approved usage of the language, and will be given their ordinary and accepted meaning.

Courts, common usage, and dictionary definitions are agreed that the word "make" has many meanings. (Webster's New International Dictionary, Second Edition, Unabridged, p. 1485; *Price v. Supreme Home*, Tex. Com. App., 285 S. W. 310, 312; *St. Louis Law Printing Co. v. Aufderheide*, 226 Mo. App. 680, 45 S. W. 2d 543, 545; *In re Aldridge*, 168 Fed. 93, 98, 99; *State v. Pierce*, 175 Wash. 461, 27 P. 2d 1083; *State v. O'Neil*, 24 Idaho 582, 135 Pac. 60.)

Following the conclusion of a hearing, the commission goes through several mechanical and procedural steps in "making" an order. There is a conference, or conferences. Then follows the preparation of written minutes and a written order. The minutes are then signed by the members of the commission. Later, the signature of the secretary is affixed to the actual order on behalf of the commissioners. Then follows the duplication and service of the order upon the interested parties, usually accomplished by mail. In matters arising under the Oil and Gas Conservation Division of the commission, the duplication and mailing occurs at the office of the conservation division which by statute is located at Wichita. (G. S. 1961 Supp., 74-606.)

In view of the foregoing, it cannot be said that G. S. 1949, 55-606

is definite and clear of meaning when it speaks of the "making" of an order. Sound argument may be advanced for any of several constructions as to when an order of the commission is deemed to be "made." It could be argued that the order is "made" at the conference when at least two commissioners agree to a particular order or decision. It could be argued that the order is "made" when the minutes are signed by at least two commissioners, or it could be advanced that, as urged by Woodson, the order is made when the secretary of the commission signs the order following the signing by the commissioners and the minutes and order are physically placed among the records of the commission. Or it could be said that the order is "made" when it is publicized and the interested parties are "apprised" of it through a formal means such as service of a copy upon them.

Since there is obviously more than one meaning which may reasonably be given the statute to achieve certainty and clarity, Woodson's argument that there is no room for construction or interpretation must necessarily fail.

While the statute (55-606) does not contain a provision specifically providing for notice of the commission's order before the commencement of the ten-day period within which a petition for rehearing must be filed, this court has recognized the rule that where no express provision for notice is made in the statute, if there be nothing in the statute which prevents notice from being given, the requirement of reasonable notice will be implied. (*Railroad Co. v. Abilene,* 78 Kan. 820, 827, 98 Pac. 224; *Tatlow v. Bacon,* 101 Kan. 26, 165 Pac. 835; *State, ex rel., v. Allen County Comm'rs,* 143 Kan. 898, 901, 902, 57 P. 2d 450.) In reality, the court simply reads the provision into the statute in order to uphold its validity as against the Fourteenth Amendment and Sections 2 and 18 of the Bill of Rights of the Constitution of Kansas.

We think an order of the commission entered pursuant to G. S. 1949, 55-133 and 55-606 after notice to all interested parties and a full hearing of the issues, cannot be said to have been "made" for the purpose of defining rights of those seeking relief thereunder, when the substance of the order is merely in the bosom of the commission. Knowledge of the substance of the order must be made manifest by notice to the interested parties.

The Oil Conservation Act empowers the commission to promulgate rules and regulations to carry out and enforce the act (G. S.

1961 Supp., 55-604, 55-605) and the commission has consistently applied the rules quoted above since they were compiled in 1947. Those rules are within the power of the commission to promulgate, and they place a reasonable construction upon the statute for determining when an order is considered "made." In the construction of a statute, and particularly one of this character, the interpretation placed upon it by an administrative agency whose duties are to carry the legislative policy into effect, should be given great weight, and may be entitled to controlling significance when the scope and limitations of such powers must be determined in judicial proceedings. (*Southwestern Bell Telephone Co. v. Employment Security Board of Review*, 189 Kan. 600, 607, 371 P. 2d 134, 93 A. L. R. 2d 1312.)

By requiring notice to be given pursuant to its rules, the commission has satisfied the requirements of the statute, and the "making" of the order is to be considered effective upon service pursuant to Rule 82-1-8, unless otherwise provided in the order. Under that rule, service of an order may be made personally or by mail except where otherwise provided in the statute, and as we have seen, the statute makes no other provision. Service by mail shall be deemed completed two days after the mailing of the order, which, in this case, was May 2, 1962, and the time in which a petition for rehearing may be filed begins to run from that date. Contrary to Woodson's contention, the case of *Colorado Interstate Gas Co. v. State Corporation Comm.*, supra, p. 1, does not reach the question of when an order is "made" for the purpose of determining whether a petition for rehearing has been timely filed.

The importance of the question here presented is demonstrated by the following: The district court's judgment that Cities Service's petition for rehearing was not timely filed with the commission was entered on December 13, 1962. Referring to matters of public record in the office of the commission, which this court may judicially notice, from January 1, 1963, through February 10, 1964, approximately 400 orders were made by the commission pertaining to salt water disposal and repressuring applications filed with the commission. Under the ruling of the district court, the ten days for filing a petition for rehearing had expired before 196 of those orders were mailed to the interested parties. In addition, the commission issued over 1200 orders pertaining to oil and gas conservation matters during a period commencing January 1, 1963, and

extending through February 4, 1964. The commission's records show that under the ruling of the district court, the ten days for filing a petition for rehearing had expired before 542 of those orders were released by the commission and mailed to the interested parties. Thus, out of a total of approximately 1600 orders of the commission, the parties affected by 738 of such orders would be precluded from filing timely petitions for rehearing or subsequently seeking a judicial review of such orders. Under the district court's ruling those 738 orders became final before they were mailed by the commission and notice given to the parties affected thereby. As is noted, this appeal does not concern an isolated order, but, rather, it pertains to the rights of innumerable people with respect to the mineral resources of the state, and has a substantial impact on administrative proceedings of the commission.

While Woodson argues that the rules quoted above may only be applied to public utility matters for the reason that the authority cited for their adoption is G. S. 1949, 66-106, *et seq.* (see, also, G. S. 1949, 77-405, *et seq.*), it is clear that the commission has authority to adopt rules and regulations to enforce the oil conservation act, and we think those rules are applicable to oil and gas conservation proceedings before the commission and they are entitled to controlling significance as to when an order is "made" for determining the time in which a petition for rehearing may be filed.

Woodson argues that Cities Service did not properly initiate its proceedings in the district court so as to invoke the jurisdiction of that court for judicial review. The statute (55-606) has been construed adversely to the contention. In *Jackson v. State Corporation Commission,* supra, speaking of that section, it was said:

"It is apparent the legislature created a specific statutory action for judicial review of any rule, regulation, order or decision of the commission in oil and gas matters. The only prerequisite for the filing of such action is that a petition for rehearing first be filed with the commission within ten days after the date of the making of the commission's order or decision. The statute simply sets forth that a party may obtain judicial review of an order or decision of the commission by bringing an action for that purpose within thirty days after denial of a petition for rehearing, or if a rehearing is granted, within thirty days after final decision by the commission. The statute provides the action shall take precedence over civil actions of a different nature, and shall be tried and determined as are other civil actions. It provides the procedure, and the powers and duties of the district court. The details required in the petition cannot be determined from the requirements in other types of actions but must be determined from the provisions of this statute. . . ." (l. c. 249.)

And it was further said:

"We are of the opinion that the legislature prescribed the procedure to be followed in an action for judicial review of an order or decision of the state corporation commission in matters pertaining to oil and gas, that the procedure is complete within itself and it is not necessary to look to other statutes providing for judicial review in determining the requirements under 55-606." (l. c. 250.)

Under any conceivable construction of the proceedings in question, Cities Service's action for judicial review was properly instituted under Section 55-606 in the district court of Anderson County and Woodson's contention that other statutes should have been followed in initiating the judicial review action is without merit. Nor was it necessary for Cities Service to join Woodson as a party defendant in the judicial review action. The statute expressly states that the action shall be brought against the commission. In *Colorado Interstate Gas Co. v. State Corporation Comm.*, supra, p. 29, it was made clear that the proper party defendant in a judicial review action is the commission. It was held that the reviewing court was not concerned with individual grievances nor with resolving disputes between the parties, and the reviewing court's sole responsibility was to review and determine the validity of the commission's order. Hence, it was not necessary or proper to name Woodson as a defendant.

Other points have been raised by the parties, but in view of what has been said, it would unduly extend this opinion to state and decide them. What has been said disposes of this appeal.

The judgment of the district court is reversed.

FONTRON, J., not participating.