No. 45,652

KENNETH GEORGE, BARBARA RUTH GEORGE, RICHE GEORGE UMBARGER
and SHERRE D. GEORGE McCUE, *Appellants and Cross-Appellees,*
v. W-G FERTILIZER, INC., THAYER, KANSAS, and W. REX WOODS,
*Appellees and Cross-Appellants.*

(469 P. 2d 459)

Opinion filed May 9, 1970.

*Charles F. Forsyth,* of Erie, argued the cause, and *Clark M. Fleming,* of
Erie, was with him on the brief for the appellants and cross-appellees.

*Don W. Noah,* of Beloit, argued the cause, and *Joe F. Balch,* of Chanute, was with him on the brief for the appellees and cross-appellants.

The opinion of the court was delivered by

O'CONNOR, J.: This action was initiated by the plaintiffs, Kenneth George and members of his family, against the defendants, W-G Fertilizer, Inc. and W. Rex Woods, to determine ownership of 222 shares of stock in the corporation. After trial to a jury, which returned special verdicts generally in favor of plaintiffs, the trial court entered judgment in effect reinstating plaintiffs as owners of the corporation stock upon repayment by them of $5,200 received from Woods as down payment for the stock. Both sides have appealed.

For a proper understanding of the issues raised, the facts surrounding this controversy must be recited in some detail.

George owned and operated grain elevators near Thayer, Kansas. He and other members of his family, whom he represented, owned 222 shares of stock in W-G Fertilizer, Inc., also located at Thayer. For several years Woods had been George's accountant on tax and estate matters. In April 1962, Woods purchased the elevators from George, and during the ensuing months they talked about Woods' buying the fertilizer stock owned by the Georges.

In September 1962, George and Woods entered into an oral agreement whereby Woods would buy the stock for $22,200 ($100 per share) if George could obtain permission of the other stockholders, as required by the bylaws of the corporation. There was a sharp dispute in the testimony concerning terms of the sale. According to George, Woods was to pay for the stock before the shares were transferred. Woods, on the other hand, testified that since he had no money with which to buy the stock, the shares were to be transferred to him and he in turn would use them for collateral to secure a loan with which he would pay George approximately $5,000 down and the balance when he could.

Woods was also interested in purchasing fifty shares of fertilizer stock owned by Truman Elrod. At a special meeting of the stockholders held September 12, 1962, George and Elrod obtained permission to sell their stock to Woods. A meeting of the board of directors was held October 13, and on or about that date new stock certificates (No. 12 for the Elrod stock, and Nos. 13 and 14 for the George stock) were issued to Woods. The new certificates were

signed by the president and secretary of W-G Fertilizer, Inc. The old stock certificates (Nos. 9, 10 and 11), evidencing the 222 shares owned by the Georges, have never been found. George testified he did not execute nor deliver the certificates, although he did give Woods power of attorney to vote the shares. Woods, however, said that George did endorse and deliver the certificates.

On October 16, 1962, Woods pledged the new certificates (Nos. 12, 13 and 14), evidencing a total of 272 shares, to First State Bank of Salina and obtained a loan of $10,000. On the same day he issued a check for $5,200 payable to George, with the notation, "Downpayment on Stock W-G Fertilizer," which check was received by George the following week.

Woods wrote George a letter on May 27, 1965, which George claims was the first indication he had that the stock had actually been transferred to Woods. Upon looking into the matter, George discovered the stock had been reissued to Woods in October 1962, and had been pledged to the bank in Salina.

The plaintiffs George filed this action November 16, 1966, claiming they had never endorsed, transferred or delivered stock certificates Nos. 9, 10 and 11, and that the new certificates (Nos. 13 and 14) "were unlawfully and illegally issued and are invalid and of no force and effect." In the prayer of their petition plaintiffs asked that certificates Nos. 13 and 14 be cancelled, that certificates Nos. 9, 10 and 11 be reinstated, and that plaintiffs be recognized as the owners of the 222 shares.

Defendants, in their answer, alleged the shares of stock were sold to Woods on September 12, 1962, and that certificates Nos. 13 and 14 were duly issued to Woods pursuant to the sale; that plaintiffs' claim was barred by the statute of limitations; and further, that plaintiffs, by reason of their conduct, were estopped to deny Woods' title to the stock.

The record fails to show that a pretrial conference was held further defining the issues. The case, in this posture, was tried and submitted to the jury under instructions to which no objection was registered by the parties. The jury returned the following special verdicts:

"1. Did plaintiff J. Kenneth George transfer as defined in the Instructions 222 shares of stock to defendant W. Rex Woods in September or October of 1962? No.

"2. If your answer to No. 1 is no, when did the fact that defendants no

longer recognized and accepted plaintiffs as stockholders first become reasonably ascertainable to Mr. George?

"Upon receipt of letter from W. Rex Woods dated May 27, 1965."

Thereupon, plaintiffs moved for judgment in accordance with the special verdicts. In ruling on the motion, the trial judge issued a memorandum opinion in which he noted that although this was a suit in equity to determine the rights of the parties between themselves, it was not an action for rescission of a contract—the issue submitted to the jury being very narrow—whether plaintiffs had transferred the stock to Woods. Further the judge stated that because equitable principles applied, the court was required to render a decree which worked equity, and plaintiffs should be required to do equity; hence, plaintiffs were entitled to be reinstated as stockholders in the defendant corporation but could not retain the money paid them by Woods.

Plaintiffs filed a motion to alter or amend the judgment proposed in the court's memorandum on two grounds: (1) that judgment should be entered as requested in their original motion, or (2) in the alternative, if plaintiffs were to be directed to pay Woods any sum of money under the judgment, they should be granted the right to introduce evidence with reference to any equitable setoffs to which they might be entitled against Woods. The motion was overruled.

The formal journal entry of judgment filed September 4, 1968, recited:

". . . upon the payment to the Clerk of the District Court of Neosho County, Kansas, of the sum of $5200.00 by the plaintiffs, plaintiffs will be decreed to be the owners of 222 shares of stock of W-G Fertilizer, Inc., Thayer, Kansas, and that stock certificates No. 13 and 14 issued by said corporation assigning ownership of 222 shares to the defendant, W. Rex Woods, be cancelled, set aside and held for naught."

The denial of their motion to alter or amend the proposed judgment constitutes the principal point urged by plaintiffs in their appeal. They first contend that the court had no jurisdiction to order them to return the $5,200 down payment to Woods, under the general proposition that courts have jurisdiction to decide only such issues as are raised by the pleadings, and a judgment which goes beyond such issues is void. (*Green v. Kensinger*, 193 Kan. 33, 392 P. 2d 122; *Shriver v. Board of County Commissioners*, 189 Kan. 548, 370 P. 2d 124.) We believe the argument overlooks the fact that the power of equity was invoked in the first place by the

plaintiffs in the instigation of their lawsuit. Not only did they seek to determine ownership of the stock, they also requested restoration of property rights alleged to have been unlawfully taken from them. The nature of the relief sought was that which only equity could provide. At oral argument plaintiffs' counsel stated they were merely asking to be placed in the same position as they were before the transfer, but were not attempting to rescind the oral contract. This, we believe, begs the question.

It is fundamental that anyone going into equity and asking its aid submits himself to the imposition of such terms as well-established equitable principles require and dictate in the exercise of the court's sound discretion. Ordinarily, one who invokes the aid of equity must be prepared to accept its liabilities as well as its benefits. (*W. K. H. Trust Co. v. Building Co.*, 160 Kan. 605, 164 P. 2d 143; 27 Am. Jur. 2d, Equity § 134.) There is no question that the Georges had received and accepted the $5,200 down payment from Woods; and to permit them to be reinstated as owners, without at the same time considering the money paid them for the stock, could well lead to an unjust and inequitable result. Furthermore, under all the circumstances of this case, the failure of plaintiffs, in their pleadings or otherwise, to offer to do equity does not prevent the granting of the relief sought where the decree can be conditioned upon recognition of any equities that might exist in favor of the adverse party. (See, *Home Owners' Loan Corp. v. Oakson*, 161 Kan. 755, 173 P. 2d 257; 12 C. J. S., Cancellation of Instruments § 44b.)

The trial court properly took into consideration the money received by plaintiffs from the defendant Woods, but, as we will later point out in the opinion, should have favorably considered the alternative ground of plaintiffs' motion to alter or amend the proposed judgment by permitting them to introduce evidence of any equitable setoffs.

As previously indicated, the trial court, in rendering judgment, ordered that the new stock certificates (Nos. 13 and 14) be cancelled, set aside and held for naught. This portion of the decree cannot be upheld, inasmuch as the evidence disclosed these certificates were no longer in the hands of Woods but had been pledged as security to the First State Bank of Salina. The bank had not been made a party to this lawsuit, and the district court, in its memorandum and judgment herein, made no attempt to

determine the bank's rights, if any, under its pledge agreement with Woods.

The bank, however, had not been idly standing by, in respect to asserting its rights to the certificates in question. On December 15, 1966 (about one month after plaintiffs instituted this case), the bank commenced an action in the district court of Saline county against Woods, the Georges and the fertilizer company. In the Saline county action the bank claimed a first and prior lien on the stock in question; that their security interest was being jeopardized by the present action in Neosho county; and further, that in the event that the sale of stock by the Georges to Woods was found to be invalid by the Neosho county district court, the bank would be injured as a result of misrepresentation and fraud on the part of Kenneth George in holding himself out to be the owner of the stock and authorized to sell and convey the same to Woods.

So far as the record is concerned, the pendency of the Saline county action was not brought to the attention of the Neosho county district court until defendants filed their motion for new trial, with a copy of the bank's petition attached. On this basis the defendants urged, without avail, that the trial court was without jurisdiction to try the case and enter judgment because the court in Saline county was the first to acquire jurisdiction over the *complete subject matter* of the controversy with all of the *necessary and indispensable* parties. The jurisdictional question thus raised is the principal point advanced by defendants in their cross-appeal.

While courts generally frown upon piecemeal litigation when all questions or controversies between interested parties can be determined in one action, we are of the opinion the district court of Neosho county had jurisdiction to determine the rights and liabilities as between the Georges and Woods growing out of the abortive transfer of the shares of stock. The court, however, had no jurisdiction to adjudicate the bank's security interest in the certificates, which were in its possession, under its agreement with Woods.

The provisions of the Uniform Stock Transfer Act in effect at the time of these transactions (K. S. A. 17-4807 [Repealed, L. 1965, ch. 564, § 416], now K. S. A. 84-8-301) provided that a transfer of a stock certificate could not be rescinded when the certificate had been transferred to a purchaser for value in good faith without notice of any facts making the transfer wrongful. Whether the bank was a bona fide purchaser was an issue to be determined in the

Saline county case. It was not made an issue in the present case, nor had the bank been made a party to this action. Thus, the district court of Neosho county was without jurisdiction to decree "that stock certificates No. 13 and 14 issued by said corporation, assigning ownership of 222 shares to the defendant, W. Rex Woods, be cancelled, set aside, and held for naught."

Our conclusion in this respect does not render the Neosho county action an exercise in futility. The issue of ownership in the stock certificates as between the Georges and Woods has now been determined, leaving the bank, in the Saline county case, in a position to litigate its security interest. This record contains nothing about the Saline county action other than the bank's petition. We assume that no attempt is being made in that case to litigate any equitable setoffs to which the Georges may be entitled against Woods for wrongful transfer of the stock, which is the very point that plaintiffs urged as an alternative ground in their motion to alter and amend the proposed judgment in the present case. Inasmuch as the evidence at trial disclosed that Woods was in serious financial straits, which is further substantiated by the pendency of the Saline county action, we believe that the trial court here should have granted plaintiffs' motion and permitted them to introduce evidence concerning any equitable setoffs.

A court of equity is not obliged to render the specific relief prayed for but may make such a decree as justice demands, under all the facts and circumstances as revealed by the evidence. The respective rights of the parties should be determined by an appropriate decree so as to avoid future litigation insofar as possible. (*Nelson v. Robinson,* 184 Kan. 340, 336 P. 2d 415, and authorities therein cited.)

Defendants, in their cross-appeal, complain that the court erred in determining that plaintiffs' action was not barred by the two-year statute of limitations (K. S. A. [now 1969 Supp.] 60-513 [2]). We do not agree. The evidence was in dispute as to when the "fact of injury" first became reasonably ascertainable to plaintiffs and, thus, was an issue for determination by the trier of fact. (See cases collected in 3 Hatcher's Kansas Digest, Limitation of Actions § 193; 6A West's Kansas Digest, Limitation of Actions § 199.) This issue was properly submitted to the jury under instructions to which defendants made no objection. The jury's finding, ultimately adopted by the trial court, was to the effect that plaintiffs' cause of action

did not accrue until May 27, 1965, which was less than two years before the action was brought. There being evidence to support the finding, it will not be disturbed on appellate review.

Other points raised in defendants' cross-appeal have been examined and found to be without merit.

From what has been said, the judgment of the district court is affirmed in part and reversed in part. Plaintiffs are decreed to be the owners of the 222 shares of stock, subject to repayment by them of $5,200 to Woods, less any equitable setoffs they are able to establish at a further hearing on the matter. The case is remanded with directions to proceed in accordance with the views herein expressed.

FROMME, J.: Dissenting. The partial disposition of this controversy approved by the majority opinion will result in further uncertainty and confusion for these litigants. The Neosho county case was submitted on limited issues. The court affirms the case on the issue of the George family's ownership and rights to the original certificates of stock. The original certificates are lost or destroyed.

The court reverses and returns the case to the Neosho district court to determine equitable set-offs against $5,200 which the George family is ordered to repay to Woods before being entitled to reissue of this stock. Assuming the equities are determined and the amount is paid to Woods the Neosho district court will presumably order the corporation to reissue 222 shares of stock to the George family.

However, new certificates were previously issued to Woods. He pledged these new certificates with the bank in Salina. The pending action in the Saline district court includes these same parties plus the bank. It is probable that the Saline district court in that action will find and determine that the bank is a bona fide holder under the Uniform Stock Transfer Act and entitled to its lien on the certificates of stock which they now hold. In such case the certificates of stock may be ordered sold to satisfy the indebtedness. In the hands of a purchaser at the sale the stock as evidenced by the certificates would be validly owned and held by the purchaser.

In such event the Neosho county judgment affirming the George family ownership of the stock is an exercise in futility, regardless of what may be said to the contrary in the majority opinion. In truth and in fact the ultimate outcome of this controversy depends

upon the judgment of the Saline district court which has jurisdiction of all parties necessary to determine the entire controversy.

The error which should require a complete reversal of the judgment with directions to dismiss the case arises because of the absence of an indispensable or necessary party, the Salina bank. During the trial in the Neosho district court evidence was introduced which established that the Salina bank claimed an interest in the reissued certificates which had been pledged to it to secure indebtedness. At that time the Salina bank was known to be a necessary party to determine the entire controversy between Woods and the George family. Without the bank complete relief could not be accorded to those parties already in the action. The bank held possession of the certificates evidencing 222 shares in this corporation. This stock was the subject matter of the Neosho county action. As a practical matter it should have been apparent to the parties that they were subject to substantial risk of incurring inconsistent obligations with regard to the subject matter of the action because of the bank's rights in the stock and the pendency of the action in Saline county. The bank was a necessary party. (See K. S. A. 60-219 [now 1969 Supp.])

It is well settled that where there is concurrent jurisdiction in more than one court, the court which first acquires jurisdiction retains it to the exclusion of another court which is requested or seeks to assume it. (See *Colorado Interstate Gas Co. v. State Corporation Comm.* 192 Kan. 29, 386 P. 2d 288, and cases cited at page 35.)

There are certain prerequisites to the application of this rule.

In 20 Am. Jur. 2d, Courts, § 131, the rule is stated:

"Generally, the priority principle is applicable only when the cases involved are identical as to subject matter, parties, and relief sought. The identity as to subject matter, parties, and relief sought must be such that a final adjudication of the case by the court in which it first became pending would, as *res judicata*, be a bar to further proceeding in a court of concurrent jurisdiction."

Also, in section 138, another is stated:

"The priority principle does not come into operation where the plaintiff cannot obtain from the first court all the relief asked for and to which he is entitled. This means that though the party who invokes the jurisdiction of one of the courts having concurrent jurisdiction is generally bound by his election and cannot thereafter bring an action in another tribunal, this is not so where the later suit involves questions that cannot be considered in the earlier one. In fact, it has been said that where an action is brought in a court that does not have the jurisdiction to afford complete relief, the court

having such jurisdiction may restrain the parties from proceeding further in the court not having such plenary jurisdiction. Moreover, it has been said that to bring the priority principle into operation in the suit later instituted, the defendant as well as the plaintiff must have a complete opportunity for the adjudication of his rights in the suit first instituted.

"In this connection it has been pointed out that the priority principle must yield to the more vital and fundamental principle of justice which requires that every litigant shall have his day before a court competent to afford adequate and complete relief."

The law of Kansas is to the same effect. See *Walker v. McNutt,* 165 Kan. 533, 196 P. 2d 163.

The bank is an indispensable party to a complete determination of this controversy. There is no relief which can be granted by the Neosho district court against either W-G Fertilizer, Inc. or Woods which does not substantially affect the rights of the bank. Therefore, since the George family chose not to make the bank a party to the Neosho county action, and the bank chose not to intervene in Neosho county but to file its own action in Saline county and secured service on all parties necessary to a complete determination of the matter in Saline county, the Saline district court was the first court to acquire jurisdiction of all parties. Thereafter all proceedings herein should have been in the Saline district court and the defendants not required to defend a piecemeal affair in Neosho county.

The entire controversy can and should be litigated in the Saline county action.

The judgment partially determining the controversy should be reversed and the case should be remanded with directions to dismiss the action.

PRICE, C. J., and SCHROEDER, J., join in the foregoing dissenting opinion.